**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

INDIRA FALCON,

Plaintiff,

v. Case No. 8:23-cv-2340-TPB-JSS

TELEVISAUNIVISION DIGITAL, INC.,

Defendant.
_______________________________________/

## MOTION TO COMPEL ARBITRATION AND STAY ACTION

Defendant TelevisaUnivision Digital, Inc. ("TelevisaUnivision") moves under the Federal Arbitration Act, 9 U.S.C. §1, *et seq*., to compel Plaintiff Indira Falcon to arbitrate her claim, to stay this action pending completion of arbitration, and to stay proceedings pending resolution of this motion.

## INTRODUCTION

This case requires arbitration. Plaintiff agreed to arbitrate disputes with TelevisaUnivision on at least two occasions: she agreed to Terms of Use requiring mandatory arbitration when she created her account to use the Vix.com streaming service and again, that same day, when she registered for a premium account on Vix.com. Despite agreeing to arbitrate, Plaintiff sues in Federal District Court, claiming that TelevisaUnivision violated the Video Privacy Protection Act ("VPPA") by allegedly sharing information about videos she watched with Facebook via a "Meta pixel." Plaintiff's claim falls squarely within the agreement to arbitrate. In fact, courts

throughout the country regularly compel arbitration of VPPA claims where, as here, the plaintiff has agreed to arbitrate. This motion respectfully requests that this Court follow that precedent and order arbitration in this case.[1]

## BACKGROUND

TelevisaUnivision operates ViX.com, a Spanish-language streaming service. On April 14, 2023, Plaintiff created an account on ViX.com and registered for a premium account. Am. Compl. ¶ 18; Declaration of David Chen ¶ 6 ("Chen Decl." attached as Exhibit 1).[2] After creating her ViX account, Plaintiff allegedly viewed video content at some unspecified time "[p]rior to the filing of this action." Am. Compl. ¶ 23. Plaintiff claims her viewing history was disclosed to Facebook by a "Meta pixel" in violation of the VPPA. *Id.* ¶ 1.

To create an account on ViX.com, a user must enter her email address and create a password. *Id.* ¶ 8. Immediately between the password field and the "Create account" button, the user is presented with this statement: "By clicking 'Create account,' I agree to the **Terms of Use** and acknowledge that my personal information

[1] Before filing this motion, TelevisaUnivision requested, orally and in writing, for Plaintiff to abide by her agreement to arbitrate. In the parties' good-faith conference, Plaintiff was provided with screenshots of her acceptance of the agreement to arbitrate and authority from this District confirming that she had accepted the agreement to arbitrate. Plaintiff continues to refuse to abide by her agreement to arbitrate, necessitating this motion.

[2] On a motion to compel arbitration, if necessary, the Court "may consider evidence outside of the four-corners of the complaint," including declarations and the agreement itself. *Farrell v. Aaron's, Inc.*, 2019 WL 13262714, at *3 (M.D. Fla. May 16, 2019).

will be used in accordance with ViX's **Privacy Policy**."[3] *Id.* (emphasis in original). Plaintiff could not have created an account without completing this process. *Id.*

After creating her account, Plaintiff registered for a premium account with a monthly payment option and was once again presented with, and required to agree to, the Terms of Use. *Id.* ¶ 6. To register for a premium account, a user must enter her billing information and click the "Subscribe" button. *Id.* ¶¶ 11–12. Immediately above the "Subscribe" button, the user is presented with this statement: "By clicking '**Subscribe**', you agree to the terms above and additional subscription terms in our Terms of Use" followed by a hyperlink to the "**Terms of Use**." Plaintiff could not have registered for a premium account without completing this process. *Id.* ¶ 12.

The versions of the pages Plaintiff saw when creating her account and registering for a premium account on April 14, 2023, are displayed on the following page. *Id.* ¶¶ 7, 11.

[3] The text that appears on ViX.com is initially prepared by TelevisaUnivision employees in English, after which the text is translated by professional translators for publication on ViX.com in Spanish. *Id.* ¶ 14. TelevisaUnivision maintains official records of these translations from English to Spanish. *Id.* This motion relies on these official records to state in English the words and sentences that appear on the pages of ViX.com. *Id.*







The "**Terms of Use**" hyperlink on each page linked to the Terms of Use dated November 3, 2022 (the "ViX Terms of Use"), which were in effect when Plaintiff created her account and registered for a premium account on April 14, 2023, and remain in effect to this day. *Id.* ¶ 10; Ex. 2. The first page of the Vix Terms of Use informs the user in all capital letters that the Terms of Use include mandatory arbitration. Ex. 2 at 1.

> THIS AGREEMENT CONTAINS A MANDATORY ARBITRATION PROVISION THAT, AS NOTED BELOW, REQUIRES THE USE OF ARBITRATION ON AN INDIVIDUAL BASIS TO RESOLVE DISPUTES, RATHER THAN A JURY TRIAL OR OTHER PROCEEDING IN COURT OR CLASS ACTIONS OF ANY KIND.

Further, in Section 21, titled "**Agreement to Arbitrate**," the Terms of Use state in all capital letters that the user and TelevisaUnivision agree to arbitrate any and all disputes. *Id* at 9. (emphasis in original). Specifically, Section 21 sets forth the following agreement to arbitrate. *Id*.

> [A]LL DISPUTES ARISING OUT OF OR RELATING TO THIS AGREEMENT OR ANY ASPECT OF THE RELATIONSHIP BETWEEN YOU AND TELEVISAUNIVISION, WHETHER BASED IN CONTRACT, TORT, STATUTE, FRAUD, MISSTATEMENT OR ANY OTHER LEGAL THEORY, SHALL BE RESOLVED BY FINAL AND BINDING ARBITRATION BEFORE A NEUTRAL ARBITRATOR RATHER THAN A COURT OF JUDGE OR JURY, AND YOU AGREE THAT TELEVISAUNIVISION AND YOU WAIVE THE RIGHT TO A JURY TRIAL.[4]

Additionally, the Agreement to Arbitrate delegates to the arbitrator any question or dispute about the scope or applicability of arbitration. *Id*.

> SUCH DISPUTES SHALL INCLUDE, BUT NOT BE LIMITED TO, THOSE ARISING OUT OF OR RELATING TO THE INTERPRETATION OR APPLICATION OF THIS ARBITRATION PROVISION, INCLUDING THE ABILITY TO VERIFY ITS ENFORCEABILITY, REVOCABILITY OR VALIDITY OF THE ARBITRATION PROVISION OR ANY PORTION OF THE ARBITRATION PROVISION. ALL SUCH MATTERS SHALL BE DECIDED BY AN ARBITRATOR AND NOT BY A COURT OR A JUDGE.

[4] Section 21 contains a few exceptions to arbitration, not relevant here, such as disputes that qualify for small claims or actions in which TelevisaUnivision seeks "an injunction solely to prevent actual or threatened infringement, misappropriation, or infringement of copyrights, trademarks, trade secrets, patents or other intellectual property rights of a party." Ex. 2 at 9.

Finally, Section 21 specifies that the American Arbitration Association will conduct any arbitration between the user and TelevisaUnivision, to occur at a "location that is reasonably convenient for both parties based on their ability to travel and other pertinent circumstances." *Id*. Section 21 allows for the hearing to occur by teleconference or videoconference, rather than in person, unless the arbitrator determines that an in-person hearing is appropriate. *Id*.

Based on these facts and the legal standard and other authorities below, the Terms of Use require Plaintiff to arbitrate her claims.

## LEGAL STANDARD

The Federal Arbitration Act ("FAA") requires a court to compel arbitration "in accordance with the terms of the agreement" upon motion by either party to the agreement and provides that a written agreement to arbitrate "shall be valid, irrevocable, and enforceable, save upon such grounds exist at law or in equity for the revocation of any contract." 9 U.S.C. §§ 2, 4. The FAA embodies well-established federal policy favoring rigorous enforcement of arbitration. "[T]he law is clear: Congress has instructed that arbitration agreements like the one before us must be enforced as written." *Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612, 1632 (2018); *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 345 (2011) ("[C]ourts must place arbitration agreements on an equal footing with other contracts"); *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983) (the FAA's language manifests a "liberal federal policy favoring arbitration agreements."); *Triple I: Int'l Invs., Inc. v. K2 Unlimited, Inc.*, 287 F. App'x 63, 64 (11th Cir. 2008) (citation omitted) ("Absent some

violation of public policy, a federal court must refer to arbitration any controversies covered by the provisions of an arbitration clause.”).

In compelling arbitration, the Court considers “(1) whether a valid written agreement to arbitrate exists; (2) whether an arbitrable issue exists; and (3) whether the right to arbitrate was waived.” *Nugent v. Appa, LLC*, , 2020 WL 13369444, at *2 (M.D. Fla. Aug. 31, 2020) (Mendoza, J.); *Telecom Italia, SPA v. Wholesale Telecom Corp.*, 248 F.3d 1109, 1114 (11th Cir. 2001) (“Absent some violation of public policy, a federal court must refer to arbitration any controversies covered by the provisions of an arbitration clause.”).[5] “Judicial effectuation” of the FAA “requires any doubts concerning the scope of arbitrable issues be resolved in favor of arbitration.” *Bell v. Atl. Trucking Co.*, 2009 WL 4730564, at *3 (M.D. Fla. Dec. 7, 2009) (Corrigan, J.), *aff’d*, 405 F. App’x 370 (11th Cir. 2010).

**ARGUMENT**

Plaintiff should be compelled to arbitrate in accord with the arbitration agreement in the ViX Terms of Use. By creating an account on ViX.com, Plaintiff and TelevisaUnivision entered a valid agreement to arbitrate. An arbitrable issue exists because Plaintiff’s claim under the VPPA fits squarely within the scope of the

[5] TelevisaUnivision has not waived the right to compel arbitration. *See generally Morgan v. Sundance, Inc.*, 596 U.S. 411 (2022). Under *Morgan*, a party waives the right to arbitration only by acting “inconsistently with the arbitration right by ‘substantially participat[ing]’ in the litigation based on the totality of the circumstances.” *Adams*, 2023 WL 5573822, at *5 (citation omitted). TelevisaUnivision has filed no substantive motion, has presented no defense on the merits, and confirmed in the mandatory case management report that it reserves the right to move to compel arbitration.

agreement to arbitrate any and all disputes arising out of or relating to the Terms of Use or any aspect of the user's relationship with TelevisaUnivision.

## I. Plaintiff and TelevisaUnivision entered a valid agreement to arbitrate.

The FAA lays out "a clear presumption—'a national policy'—in favor of arbitration," *Parnell v. CashCall, Inc.*, 804 F.3d 1142, 1146 (11th Cir. 2015), and the validity of an agreement to arbitrate is assessed under state law, *see* 9 U.S.C. § 2 (providing that arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."); *Howse v. DirecTV, LLC*, 221 F. Supp. 3d 1339, 1342 (M.D. Fla. 2016) (Byron, J.) ("Because arbitration clauses are themselves creatures of contract, courts apply state contract law in determining [their] scope and enforceability . . . .").

Under Florida law, "the three elements of contract formation are . . . offer, acceptance, and consideration." *Pezold Air Charters v. Phoenix Corp.*, 192 F.R.D. 721, 725 (M.D. Fla. 2000) (Sharp, J.).[6] Additionally, "Florida public policy favors arbitration, and any doubts concerning the scope of an arbitration agreement should be resolved in favor of arbitration." *Dye v. Tamko Bldg. Products*, Inc., 275 F. Supp. 3d

[6] The Terms of Use include a choice-of-law clause, which states, "The terms of this Agreement are governed by the laws of the United States (including federal arbitration law) and the State of New York, U.S.A., without regard to any principles of conflicts of law and where you are located." Decisions in the Middle District of Florida observe that the existence of an agreement to arbitration is likely a question of contract formation—not interpretation. Therefore Florida law, not New York law, likely governs whether Plaintiff entered a contract in the first place. *Dandridge v. Sherwin Williams, Inc.*, 2021 WL 2228394, at *1, n.1 (M.D. Fla. May 26, 2021). In any event, the result would be the same under New York law. *See Temple v. Best Rate Holdings LLC*, 360 F. Supp. 3d 1289, 1312 (M.D. Fla. 2018) (applying New York law).

1314, 1317 (M.D. Fla. 2017) (quoting *BKD Twenty-One Mgmt. Co., Inc. v. Delsordo*, 127 So. 3d 527, 530 (Fla. 4th DCA 2012)), *aff'd*, 908 F.3d 675 (11th Cir. 2018).

In the context of web-based agreements, a user agrees to a website's terms of use if "the hyperlink to the terms and conditions is conspicuous enough to put a reasonably prudent person on inquiry notice." *Adams v. Lashify*, Inc., 2023 WL 5573822, --- F. Supp. 3d ----, at *4 (M.D. Fla. Aug. 29, 2023) (Byron, J.) (citation omitted). "[C]larity and conspicuousness are a function of the design and content of the relevant interface." *Id.* (citation omitted). Courts in the Middle District of Florida (and elsewhere) regularly find terms of use on a website to be "clear and conspicuous" were, as here, the hyperlink to the terms of use is adjacent to a button clicked by the user and contrasts with other elements on the webpage. *See, e.g.*, *Adams*, 2023 WL 5573822, at *4; *Temple*, 360 F. Supp. 3d at 1312. In *Adams*, a recent decision enforcing an arbitration agreement in a hyperlinked terms of use, a user of Lashify.com was presented with this statement when clicking a checkout button: "Upon placing an order you agree to Lashify's Terms of Use, shipping & return policy." *Adams*, 2023 WL 5573822, at *4. Finding the Terms of Use hyperlink to be "clear and conspicuous," *Adams* found "critical" the "text's prominent placement proximately atop and contrasting with the dark 'CHECKOUT' button." *Id.* at *4. Accordingly, *Adams* enforced the arbitration agreement in the Lashify.com terms of use, finding that a "reasonably prudent user" would find the terms "sufficiently conspicuous." *Id.*

Like the checkout page in *Adams*, the ViX account creation page and the ViX premium registration page "critical[ly]" have the ViX Terms of Use hyperlink placed "proximately atop and contrasting with" the completion button. *See id*. In fact, a direct comparison demonstrates that the ViX Terms of Use hyperlink is more clear and conspicuous than those recently (and easily) enforced in *Adams*:







First, the white color of the ViX "**Terms of Use**" text contrasts more decisively with the black background of the ViX account creation page (and premium registration page) and with the orange "Create account" button than the gray text contrasts with the off-white background of the Lashify.com checkout page. Second, the contrasting ViX "**Terms of Use**" hyperlink appears in a single sentence immediately above the

"Create account" button, but the hyperlink and checkout button on Lashify.com are separated by a sentence about editing the order, a sentence about deadlines for placing overnight orders, and a "Subtotal" field. Third, a user who registers for a premium account on ViX, such as Plaintiff, is presented with the ViX "**Terms of Use**" hyperlink three times: when creating an account, when registering for a premium account, and when receiving an email confirmation. Chen Decl. ¶¶ 7, 11, 13; Ex. 4.

The fact that the ViX "**Terms of Use**" hyperlink is not underlined makes it even *more* conspicuous. This is because "underlining [the terms of use] distracts the reader from the actual letters and heightens the risk the letters will appear blurry." *Bernardino v. Barnes & Noble Booksellers, Inc.*, 2017 WL 7309893, at *9 (S.D.N.Y. Nov. 20, 2017) (enforcing non-underlined terms of use adjacent to a checkout button and compelling arbitration of a VPPA claim).[7] Further, any "reasonably prudent" user would know that the ViX "**Terms of Use**" text functions as a hyperlink because of the stark contrast between the white color of the hyperlinked text, on the one hand, and the dark grey color of the surrounding text, on the other.[8] Indeed, when creating an account on

[7] In fact, the ViX Terms of Use hyperlink is even more conspicuous than the terms of use hyperlink enforced in *Bernardino*: the ViX Terms of Use hyperlink appears *between* the password creation field and the account creation button and is therefore necessarily within the user's field of vision, while the hyperlink enforced in *Bernardino* was *below* the relevant "Submit Order" button. *See Bernardino*, 2017 WL 7309893, at *13.

[8] *Valiente v. Nexgen Glob., LLC*, 2023 WL 6213583, at *9, n.3 (S.D. Fla. Sept. 25, 2023), confirms this point. To determine whether the text functions as a hyperlink, the "the law asks only whether the webpage's text was contrasted from the surrounding text." *Id.* Accordingly, *Valiente* declined to enforce the terms of use because they were in "the same flavorless color" as the surrounding text. But the white ViX "**Terms of Use**" text contrasts starkly with the dark grey surrounding text and therefore is clear and conspicuous under *Valiente*.

Vix.com, the user's mouse cursor necessarily travels over the text containing the "**Terms of Use**" hyperlink, which immediately transforms the cursor into the telltale hand icon:




*Id.* ¶ 9.

For the same reasons the terms of use in *Adams* are enforceable, the ViX Terms of Use are enforceable. Where, as here, the terms of use hyperlink is adjacent to the action button and contrasts with the surrounding elements on the page, the terms are regularly and routinely enforced.[9] *See, e.g., Adams*, 2023 WL 5573822, at *4; *Derriman*, 2023 WL 9022723, at *9; *Temple*, 360 F. Supp. 3d at 1312. By creating an account on ViX.com (and again by registering for a premium account), Plaintiff accepted the clear and conspicuous ViX Terms of Use and agreed to arbitrate.[10]

## II. Plaintiff's VPPA claim is subject to the agreement to arbitrate.

Under both Florida and New York law, a party is presumed to arbitrate a dispute if the parties have entered a broadly worded arbitration agreement. *See Jackson*

[9] As *Adams*, *Derriman*, and *Temple* demonstrate, the webpage need not mention that the terms of use contain an arbitration clause. In any event, *Derriman* rejects this argument. 2023 WL 9022723, at *7.

[10] Enforcing the ViX Terms of Use and the agreement to arbitrate would not be "unconscionable." To prevail on this argument, Plaintiff would have to demonstrate (under either Florida law or New York law) both procedural and substantive unconscionability. *Dorward v. Macy's Inc.*, 2011 WL 2893118, at *2 (M.D. Fla. Jul. 20, 2011) (Steele, J.) (applying Florida law); *Gillman v. Chase Manhattan Bank, N.A.*, 534 N.E.2d 824, 828 (1988) (applying New York law). The fact that the contract is offered on a "take it or leave it basis" does not demonstrate procedural unconscionability. *Garcia v. Church of Scientology Flag Serv. Org., Inc.*, 2021 WL 5074465, at *6 (11th Cir. Nov. 2, 2021). And nothing about the agreement to arbitrate, which ensures that the arbitration will occur at a "location that is reasonably convenient for both parties based on their ability to travel and other pertinent circumstances" suggests substantive unconscionability or overcomes the federal policy favoring arbitration.

*v. Shakespeare Found.*, Inc., 108 So. 3d 587, 593 (Fla. 2013); *Collins & Aikman Prods. Co. v. Bldg. Sys., Inc.*, 58 F.3d 16, 20 (2d Cir. 1995).[11] "[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983).

There can be no doubt that the ViX Terms of Use, which require arbitration of "all disputes arising out of or relating to this agreement or any aspect of the relationship between you and TelevisaUnivision," covers Plaintiff's VPPA claim. Ex. 2 at 9. Plaintiff's claim is based on her use of the ViX service to view videos, and thus her claim arises out of her relationship with TelevisaUnivision. Additionally, since the ViX Terms of Use govern Plaintiff's use of the ViX service, her claim arises out of or relates to the agreement as well. Under the plain language of the ViX Terms of Use, Plaintiff's claim is subject to arbitration.[12]

## III. The Court should stay this action pending arbitration.

Because a valid arbitration agreement exists and because Plaintiff's claim fits within the scope of the arbitration agreement, this Court should compel arbitration and stay this action until completion of the arbitration. Under 9 U.S.C. § 3, a district

[11] As explained in footnote 4 *supra*, the ViX Terms of Use apply New York law to the interpretation of the Terms of Use. Plaintiff's claim is subject to the agreement to arbitrate regardless of the applicable law. *See Jackson*, 108 So. 3d at 593; *Collins*, 58 F.3d at 20.

[12] Even if Plaintiff attempted to dispute the scope of the arbitration clause, the Terms of Use confirm that any question "arising out of or relating to the interpretation or application of this arbitration provision" is reserved for the arbitrator. Ex. 9. This is a "clear and unmistakable" delegation to the arbitrator to resolve any question about the scope of the arbitration clause. *Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 70 (2010).

court "shall" stay the action pending resolution of the arbitration. *See also Klay v. All Defendants*, 389 F.3d 1191, 1204 (11th Cir. 2004) ("For arbitrable issues, the language of Section 3 indicates that the stay is mandatory.")

Additionally, this Court should also stay proceedings pending resolution of TelevisaUnivision's Motion to Compel Arbitration. *See Johnson v. Whaleco*, Inc., 2023 WL 6292691, at *1 (M.D. Fla. Sept. 27, 2023) (Lammens, M.J.) (staying discovery pending motion to compel arbitration for good cause—"the elimination of unnecessary expenditures of time, money, and other resources—and where the motion was filed in good faith); *Hillery v. Dick Baird, Inc*, 2019 WL 13082690, at *2 (M.D. Fla. Feb. 25, 2019) (Smith, M.J.) (staying new discovery pending a decision on a motion to compel arbitration and noting that "courts have routinely stayed discovery into the underlying merits of the case when a motion to compel arbitration has been filed in good faith" (citation omitted); *Harrell's LLC v. Agrium Advanced (U.S.) Techs., Inc.*, 2011 WL 1596007, at *1 (M.D. Fla. Apr. 27, 2011) (Covington, J.) (staying discovery pending resolution of motion to compel arbitration).

## CONCLUSION

For the foregoing reasons, TelevisaUnivision respectfully requests that this Court (1) grant this Motion to Compel Arbitration, (2) stay this action under 9 U.S.C. § 3 pending resolution of the arbitration, and (3) stay this action pending resolution of this Motion to Compel Arbitration.

## LOCAL RULE 3.01(g) CERTIFICATION

I certify that counsel for TelevisaUnivision conferred with counsel for Plaintiff by email on several occasions from January 23, 2024 through February 3, 2024 and by telephone on February 2, 2024. Counsel for Plaintiff continues to oppose this motion.

Respectfully submitted,

**HOLLAND & KNIGHT LLP**

*/s/Jason H. Baruch*

Jason H. Baruch (lead counsel)
Florida Bar No. 10280
jason.baruch@hklaw.com
Mark S. Melodia
(admitted *pro hac vice*)
mark.melodia@hklaw.com
Daniel A. Silver
Florida Bar No. 1045179
daniel.silver@hklaw.com
**HOLLAND & KNIGHT LLP**
100 N. Tampa St., Suite 4100
Tampa, Florida 33602
Phone: 813-227-8500
Fax: 813-229-0134
*Attorneys for TelevisaUnivision Digital, Inc.*