**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**

INDIRA FALCON, *individually and on behalf of all others similarly situated*,

Plaintiff,

v.

TELEVISAUNIVISION DIGITAL, INC.,

Defendant.
_______________________________________/

**Case No. 8:23-cv-02340-TPB**

**CLASS ACTION**

**JURY TRIAL DEMANDED**

**PLAINTIFF'S RESPONSE IN OPPOSITION TO**
**DEFENDANT'S MOTION TO COMPEL ARBITRATION**

Plaintiff Indira Falcon responds in opposition to Defendant TelevisaUnivision Digital, Inc.'s Motion to Compel Arbitration ("Motion" or "Mot."), [DE 22], and states:

## I. INTRODUCTION

Defendant seeks to compel arbitration of Plaintiff's class action claims on an individual basis pursuant to an on-line registration form that did not conspicuously disclose to Plaintiff that she was agreeing to arbitration. Defendant contends that its form was good enough because Plaintiff should have hovered her mouse over the Terms of Use – words that were *not* underlined or in a traditional hyperlink color – to discover the existence of the hyperlink. *See* Mot. at 12 ("the user's mouse cursor necessarily travels over the text containing the 'Terms of Use' hyperlink, which immediately transforms the cursor into the telltale hand icon").

Two courts in this Circuit recently rejected motions to compel arbitration based on similar forms that failed to place consumers on inquiry notice unless they "hover[ed] their mouse over otherwise plain-looking text or aimlessly click[ed] on words on a page in an effort to ferret out hyperlinks." *Valiente v. Nexgen Glob., LLC*, No. 22-cv-22480-ALTMAN/Reid, 2023 U.S. Dist. LEXIS 169829, at *26 (S.D. Fla. Sep. 22, 2023) (Altman, J.) ("*none* of the text in this carefully interred section of the website is underscored, *none* of it appears in all-capital letters, and *none* of it is displayed in contrasting fonts or colors in a way that would distinguish it from any non-hyperlinked material.") (emphasis original) (quoting *Berman v. Freedom Fin. Network, LLC*, 30 F.4th 849, 856-57 (9th Cir. 2022)); *see also Johnson v. Whaleco, Inc.*, No. 5:23-cv-403-GAP-PRL, 2023 U.S. Dist. LEXIS 184104, at *7-8 (M.D. Fla. Oct. 13, 2023) (Presnell, J.) ("Most damning to Defendant's attempt to enforce the Agreement is its use of a very light grey font against a white background, devoid of underlined text or any conspicuous visual cues.") (citations omitted).[1]

Notably, as discussed below, all of the cases cited by Defendant in its Motion involved forms that conspicuously disclosed the existence of a hyperlink through underlining and/or a blue coloring to alert consumers that a hyperlink with terms existed. This Court need look no further than those cases and Defendant's inability to cite a single instance where a court compelled arbitration based on a hyperlink that

[1] These authorities were provided by the undersigned to Defendant's counsel during the parties' conferral process.

was not underlined and lacked any of the visual cues website visitors have come to expect.

Lastly, Defendant also fails to meet its burden because the disclosures on which it relies failed to advise Plaintiff of the existence of the collateral arbitration provision that was being incorporated. Courts in this Circuit have applied Florida law to require the incorporation of collateral agreements like arbitration provisions through explicit disclosures advising consumers that they are agreeing to arbitration. *See Whaleco*, 2023 U.S. Dist. LEXIS 184104, at *9 (citations omitted).

This Court should therefore deny the Motion and permit the case to proceed on the merits.

## II. ARGUMENT

### A. Legal Standard

"Despite courts' proclivity for enforcement, a party will not be required to arbitrate where it has not agreed to do so." *Fridman v. 1-800 Contacts, Inc.*, No. 21-cv-21700-BLOOM/Otazo-Reyes, 2021 U.S. Dist. LEXIS 152553, at *4-5 (S.D. Fla. Aug. 12, 2021) (citing *Nat'l Auto Lenders, Inc. v. SysLOCATE, Inc.*, 686 F. Supp. 2d 1318, 1322 (S.D. Fla. 2010), *aff'd*, 433 F. App'x 842 (11th Cir. 2011) (citing *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582, 80 S. Ct. 1347, 4 L. Ed. 2d 1409 (1960))). "Under federal law, arbitration is a matter of consent, not coercion." *Fridman*, 2021 U.S. Dist. LEXIS 152553, at *5 (quoting *World Rentals & Sales, LLC v. Volvo Constr. Equip. Rents, Inc.*, 517 F.3d 1240, 1244 (11th Cir. 2008)).

"[T]he presumption of arbitrability 'does not apply to disputes concerning whether an agreement to arbitrate has been made.'" *Bell v. Royal Seas Cruises, Inc.*, No. 19-CV-60752-RUIZ/STRAUSS, 2020 U.S. Dist. LEXIS 85273, at *6 (S.D. Fla. May 13, 2020) (quoting *Bazemore v. Jefferson Capital Sys., LLC*, 827 F.3d 1325, 1329 (11th Cir. 2016) (quoting *Dasher v. RBC Bank (USA)*, 745 F.3d 1111, 1115-16 (11th Cir. 2014))). The Supreme Court recently reiterated this rule and rejected the claim that arbitration is broadly favored over litigation:

> Accordingly, a court must hold a party to its arbitration contract just as the court would to any other kind. But a court may not devise novel rules to favor arbitration over litigation.…***The federal policy is about treating arbitration contracts like all others, not about fostering arbitration***.

*Morgan v. Sundance, Inc.*, 142 S. Ct. 1708, 1710 (2022) (emphasis supplied).

**B. Defendant Failed to Provide Conspicuous Notice of its Arbitration Provision**

"Florida courts have held that browsewrap agreements encompass those where '[t]he purchaser can complete the transaction without visiting the page containing the terms and conditions.'" *Whaleco*, 2023 U.S. Dist. LEXIS 184104, at *6-7 (quoting *MetroPCS Comms., Inc. v. Porter*, 273 So. 3d 1025, 1028 (Fla. 3d DCA 2018)). "Defendant's website allowed Plaintiff to do just that: complete her registration without visiting the terms and conditions." *Whaleco, Inc.*, 2023 U.S. Dist. LEXIS 184104, at *6-7.

> When "there is no evidence that the website user had actual knowledge of the agreement, the validity of

> the browsewrap agreement turns on whether the website puts a reasonably prudent user on inquiry notice of the terms of the contract." *Nguyen*, 763 F3d at 1177. "Whether a reasonably prudent user is put on inquiry notice turns on the clarity and conspicuousness of [the] terms." *Babcock v. Neutron Holdings, Inc.*, 454 F. Supp. 3d 1222, 1230 (S.D. Fla. 2020) (citations and quotations omitted). "In the context of web-based contracts, clarity and conspicuousness are a function of the design and content of the relevant interface." *Id.* (citations and quotations omitted).

*Fridman v. 1-800 Contacts, Inc.*, No. 21-cv-21700-BLOOM/Otazo-Reyes, 2021 U.S. Dist. LEXIS 152553, at *13 (S.D. Fla. Aug. 12, 2021).

Courts in this Circuit and others have applied these principles to unanimously deny motions to compel arbitration where the hyperlink containing the arbitration agreement was not underlined or in a traditional hyperlink color (i.e., blue) as is the case here. For example, in *Whaleco*, Judge Presnell held that the following online disclosures were not sufficiently conspicuous because they did not contain any of the visual cues traditionally used to denote the existence of a hyperlink:




2023 U.S. Dist. LEXIS 184104, at *7-8 (M.D. Fla. Oct. 13, 2023) (Presnell, J.) ("Most damning to Defendant's attempt to enforce the Agreement is its use of a very light grey font against a white background, devoid of underlined text or any conspicuous visual cues.") (citations omitted).

Similarly, in *Valiente* – which Defendant attempts to distinguish in a footnote, *see* Mot. at n. 8 – Judge Altman denied a motion to compel based on a white font hyperlink because it was not underlined, in capital letters, or in a traditional hyperlink color:




2023 U.S. Dist. LEXIS 169829, at *26 (S.D. Fla. Sep. 22, 2023).

Most recently, a court in the Northern District of Illinois held that even the following disclosures, while underscored, were insufficient to place a consumer on inquiry notice because the "gray font [] contrasts poorly with the background[]":




*Campos v. Tubi, Inc.*, No. 23-cv-3843, 2024 U.S. Dist. LEXIS 22247, at *4, (N.D. Ill. Feb. 8, 2024).

As the First District Court of Appeals observed, "[w]hile not all hyperlinks need to have the same characteristics, they are 'commonly blue and underlined.'" *Cullinane v. Uber Techs., Inc.*, 893 F.3d 53, 63 (1st Cir. 2018) (quoting *CR Assocs. L.P. v.*

*Sparefoot, Inc.*, No. 17-10551-LTS, 2018 U.S. Dist. LEXIS 26438, 2018 WL 988056, at *4 n.4 (D. Mass. Feb. 20, 2018); citing *Meyer v. Uber Techs., Inc.*, 868 F.3d 66, 78 (2d Cir. 2017) ("[T]he hyperlinks are in blue and underlined."); *Adelson v. Harris*, 774 F.3d 803, 808 (2d Cir. 2014) ("[T]he hyperlinks were not hidden but visible in the customary manner, that is, by being embedded in blue, underlined text."); *Fteja v. Facebook, Inc.*, 841 F. Supp. 2d 829, 835 (S.D.N.Y. 2012).

Accordingly, courts across the country have found notice inquiry only where hyperlinks were in a traditional color and/or underscored. *See, e.g., Bold Ltd. v. Rocket Resume, Inc.*, No. 22-cv-01045, 2023 U.S. Dist. LEXIS 108212, at *10 (N.D. Cal. June 22, 2023) ("The words 'Terms of Use' and 'Privacy Policy' are in blue font and underlined"); *Ball v. Skillz Inc.*, No. 2:20-cv-00888, 2020 U.S. Dist. LEXIS 211493, 2020 WL 6685514, at *1 (D. Nev. Nov. 12, 2020) (hyperlink underlined); *Anderson v. Amazon.com, Inc.*, 490 F. Supp. 3d 1265, 1269 (M.D. Tenn. 2020) (hyperlinks noted through contrasting color and underlined).

As a sophisticated business, Defendant knows that hyperlinks are traditionally blue and underlined. Defendant instead opted to use a light gray or white font to conceal the existence of a hyperlink, while using a large orange call-to-action button. In all, the placement, coloring, lack of underscoring, and font size of Defendant's hyperlink were designed to distract a reasonable consumer from being placed on notice of what he/she was agreeing to. *See Fridman*, 2021 U.S. Dist. LEXIS 152553, at *20-21 ("the record does not support the conclusion that Plaintiff was on constructive

notice of the Website's Terms, which include the arbitration and class action waiver provisions.").

And the cases cited by Defendant in fact support Plaintiff's opposition that inquiry notice should only be found where a hyperlink is underlined and/or depicted using a traditional hyperlink color. For example, the hyperlinks in *Bernardino v. Barnes & Noble Booksellers, Inc.,* were in blue font:




No. 17-CV-04570 (LAK) (KHP), 2017 U.S. Dist. LEXIS 192814 (S.D.N.Y. Nov. 20, 2017).

In *Adams v. Lashify, Inc.*, the hyperlinks were underlined:



No. 6:23-cv-243-PGB-DCI, 2023 U.S. Dist. LEXIS 152515, at *1 (M.D. Fla. Aug. 29, 2023).

Similarly, in *Derriman v. Mizzen & Main LLC*, the "Terms" and "Privacy" hyperlinks were underlined:




2023 U.S. Dist. LEXIS 230653, at *17 (M.D. Fla. Dec. 29, 2023).

And in *Temple v. Best Rate Holdings LLC*, the hyperlinks were blue and underlined:




360 F. Supp. 3d 1289, 1296 (M.D. Fla. 2018). So not only does Defendant fail to cite any cases supporting its position, the few it does reference undermine its argument.

Defendant also makes a passing reference to an email that it sent Plaintiff after creation of Plaintiff's account. *See* Mot. at 11. Even if Defendant had shown assent to the terms contained within that email[2] – which it has not – Defendant places little weight on the e-mail because it knows that the case law is unanimously against its implied argument that browsewrap hyperlinks located at the bottom of a webpage or email are enforceable. *See Mochan v. Madison Reed, Inc.*, No. 22-80915-CIV-SMITH,

[2] *See Gaudreau v. My Pillow, Inc.*, No. 6:21-cv-1899-CEM-DAB, 2022 U.S. Dist. LEXIS 118524, at *11 (M.D. Fla. July 1, 2022) ("Without proof of use, and a contract provision indicating that use binds the user, no agreement for arbitration exists between the parties.")

2023 U.S. Dist. LEXIS 123921, at *7 (S.D. Fla. July 19, 2023); *Goldstein v. Fandango Media*, *LLC*, No. 9:21-cv-80466-RAR, 2021 U.S. Dist. LEXIS 139153, at *3 (S.D. Fla. July 27, 2021) ("It is significant that Fandango's notice regarding the binding nature of its Terms and Policies was placed *beneath* the large, orange, all-capitalized, COMPLETE MY PURCHASE click button, rather than above it.") (emphasis original).

In sum, this Court should, respectfully, follow the well-reasoned line of cases discussed above which require website operators like Defendant to use traditional visual cues to alert consumers of the existence of a hyperlink if they want to bind consumers to their terms. But even if this Court determines that the Terms of Use hyperlink was sufficiently conspicuous, the Motion should nevertheless be denied because Defendant failed to describe and incorporate the collateral arbitration provision within its disclosures.

**C. Defendant's On-Line Form Fails to Describe and Incorporate the Collateral Arbitration Provision**

In addition to failing to utilize the necessary visual cues to place Plaintiff on inquiry notice, Defendant's on-line form, in violation of Florida law, fails to specifically describe and incorporate the purported arbitration provision. In *Goldstein*, part of the court's reasoning for denying the motion to compel arbitration was based on the browsewrap agreement's failure to comply with Florida law with respect to the

incorporation of collateral documents. *See* 2021 U.S. Dist. LEXIS 139153, at *10. Specifically, the court held in pertinent part:

> the language used in Fandango's browsewrap agreement is insufficient to place a reasonable user on notice that completing a purchase represents a waiver of the user's right to file a lawsuit compelling Fandango's appearance in court. In Florida, to incorporate a collateral document into an agreement, the agreement must: (1) specifically provide that the collateral document is being incorporated; and (2) sufficiently describe the collateral document being incorporated….Here, Fandango's Arbitration Agreement is a collateral document, but Fandango's notice does not sufficiently describe it so that the user is on notice of the mandatory arbitration provision, nor does Fandango specifically advise the user that an agreement to arbitrate is being incorporated into its Terms and Policies.

*Id*. (citing *Vitacost.com, Inc. v. Mccants*, 210 So. 3d 761, 762 (Fla. 4th DCA 2017) ("Florida law requires the agreement to specifically provide that the collateral document is being incorporated and to sufficiently describe the collateral document to be incorporated….The seller's webpages failed to advise the plaintiff that his purchase was subject to the terms and conditions of the sale and did not put him on inquiry notice of the arbitration provision.") (citing *Herman v. Seaworld Parks & Entertainment, Inc.*, 2016 U.S. Dist. LEXIS 181173, 2016 WL 7447555 (Fla. M.D. Aug. 26, 2016); *BGT Grp., Inc. v. Tradewinds Engine Servs.*, LLC, 62 So.3d 1192, 1194 (Fla. 4th DCA 2011)).

In *Whaleco*, Judge Presnell agreed with this requirement and denied a motion to compel arbitration for failure to describe and incorporate the arbitration provision. *See*

2023 U.S. Dist. LEXIS 184104, at *9-10 ("Therefore, Plaintiff was not put on notice to the Agreement with Defendant and cannot be compelled to arbitrate this dispute.") (citing *Vitacost.com, Inc.*, 210 So.3d at 764-65; *Royal Seas*, 2020 U.S. Dist. LEXIS 85273, 2020 WL 5742189 at *7 (finding notice sufficient where the statement *included* explicit notice of mandatory arbitration)).

Like the disclosures in *Whaleco* and *Goldstein*, Defendant's website, in violation of Florida law, fails to describe and incorporate the arbitration agreement, which is a collateral document. The website makes reference to Defendant's Terms of Use but says nothing about the arbitration clause Defendant seeks to enforce. Under Florida law, the failure to specifically describe and incorporate the collateral arbitration agreement means that Plaintiff was never placed on notice of the agreement – notwithstanding any arguments by Defendant regarding the conspicuousness of the disclosures – and, therefore, the arbitration agreement is unenforceable.

## III. CONCLUSION

Having failed to meet its burden to demonstrate that Plaintiff had actual or inquiry notice of its arbitration provision, Defendant's Motion should be denied and Plaintiff permitted to proceed with her class claims in this Court.

Date: February 14, 2024

Respectfully submitted,

By:

**LAW OFFICES OF JIBRAEL S. HINDI**
Jibrael S. Hindi, Esq.
Florida Bar No. 118259
110 SE 6th Street
Suite 1744
Ft. Lauderdale, Florida 33301

**HIRALDO P.A.**

*/s/ Manuel S. Hiraldo*
Manuel Hiraldo, Esq.*
Florida Bar No. 030380
401 E. Las Olas Blvd., Suite 1400
Fort Lauderdale, FL 33301
mhiraldo@hiraldolaw.com
305.336.7466
***Lead Counsel for Plaintiff***

**EISENBAND LAW. P.A.**
Michael Eisenband
Florida Bar Number 94235
515 E las Olas Blvd. Ste 120,
Fort Lauderdale, FL 33301
MEisenband@Eisenbandlaw.com
954-533-4092
*Counsel for Plaintiff and the Class*