**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION**

INDIRA FALCON,

Plaintiff,

v. Case No. 8:23-cv-2340-TPB-JSS

TELEVISAUNIVISION DIGITAL, INC.,

Defendant.
_______________________________/

**Defendant's Reply in Support of its Motion to Compel Arbitration**

By creating a ViX account, Plaintiff agreed to the Terms of Use, which requires arbitration of her claim. The Terms of Use is presented immediately above the create account button, includes a capitalized hyperlink to the Terms of Use that contrasts sharply with the background and statement of assent to the terms, and is unadorned by distracting features. Courts routinely enforce terms of use in these circumstances as "conspicuous."[1] Plaintiff cites no case to the contrary.

Instead, Plaintiff cites cases dealing with hyperlinks buried at the bottom of the webpage or devoid of any statement of assent to the terms (or both).[2] But the ViX hyperlink and statement of assent is immediately adjacent to the action

---

[1] *See, e.g.*, *Adams v. Lashify, Inc.*, 2023 WL 5573822, -- F. Supp. 3d --, at *4 (M.D. Fla. 2023); *Derriman v. Mizzen & Main LLC*, No., 2023 WL 9022723, -- F. Supp. 3d --, at *7 (M.D. Fla. 2023); *Hooper v. Jerry Ins. Agency, LLC*, 2023 WL 3992130, -- F. Supp. 3d --, at *3–5 (N.D. Cal. 2023); *Bernardino v. Barnes & Noble*, 2017 WL 7309893, at *9–10 (S.D.N.Y. Nov. 20, 2017).

[2] *See, e.g. Johnson v. Whaleco, Inc.*, 2023 U.S. Dist. Lexis 184104, at *7 (M.D. Fla. Oct. 13, 2023) (hyperlink was at "the bottom of the webpage beneath four buttons"); *Campos v. Tubi, Inc.*, 2024 WL 496234, at *4 (N.D. Ill. Feb. 8, 2024) (hyperlink was "very nearly at the bottom" and was "uncoupled with any mechanism for manifesting assent"); *Valiente v. Nexgen Glob., LLC*, 2023 WL 6213583, at *10-11 (S.D. Fla. Sept. 25, 2023) (same); *Fridman v. 1-800 Contacts, Inc.*, 554 F. Supp. 3d 1252, 1263 (S.D. Fla. 2021) (same).

button. This case firmly belongs with *Hooper*, *Adams*, and *Bernardino* on the "conspicuous" side of the ledger, shown clockwise below with ViX in the top left:[3]




Plaintiff's cases—*Johnson*, *Campos*, *Fridman*, and *Valiente*–deal with hyperlinks buried at the bottom of the webpage. This distinction alone dooms her position:




[3] The screenshots in this reply are cropped to isolate the "critical" aspects of conspicuousness: proximity to the action button and contrast with adjacent elements. *See, e.g.*, *Adams,* 2023 WL 5573822, at *4; *Derriman*, 2023 WL 9022723, at *7; *Hooper*, 2023 WL 3992130, at *4.

Without a case declining to enforce a hyperlinked terms of use presented immediately above an action button, Plaintiff's opposition resorts to inaccurate statements of law and cherry-picked observations from her inapplicable buried-at-the-bottom cases. First, Plaintiff contends that conspicuousness requires a hyperlink in "underlining and/or a blue coloring." Doc. 24 at 2. But as Plaintiff's own case confirms, "the law asks only whether the webpage's text was contrasted from the surrounding text." *Valiente*, 2023 WL 6213583, at *9, n.3. Accordingly, there is no specific color or underlining requirement. *Hooper*, 2023 WL 3992130, at *4 (holding that color contrast was "sufficient to 'set apart' the hyperlink from the rest of the text"). Here, the bright white, capitalized, bolded Terms of Use hyperlink is in *literal contrast* to the black background and statement of assent. Because the ViX hyperlink "was capitalized and set off from the surrounding text by brightly colored front," it is "'distinguishable from the surrounding text'" and enforceable. *Regan v. Pinger*, 2021 WL 706465, at *7 (N.D. Cal. Feb. 23, 2021).

Second, Plaintiff quibbles with the font color of the ViX statement of assent by again relying on her inapplicable buried-at-the-bottom cases. But even if Plaintiff could show that certain font colors are insufficient to draw the user's attention when buried at the *bottom* of a webpage, the ViX statement of assent appears immediately *above* the create account button the user must click, immediately *below* the password field with which the user must interact, and in a color that contrasts decisively with the bright white, capitalized, bolded hyperlinks and black background. "Thus, Plaintiff must have brought the Terms and

Conditions Hyperlink within h[er] line of vision before viewing and proceeding[.]" *Temple v. Best Rate Holdings LLC*, 360 F. Supp. 3d 1289, 1304–05 (M.D. Fla. 2018). Courts regularly find conspicuous similar statements of assent where, as here, they appear immediately adjacent to the action button and contrast with the hyperlink to the terms of use. *Hooper*, 2023 WL 3992130 (finding "conspicuous" a gray statement of assent contrasting with the terms hyperlink); *Adams*, 2023 WL 5573822, at *4 (same). The ViX Terms of Use is conspicuous and enforceable.[4]

Finally, Plaintiff's argument that the webpage must explicitly reference arbitration (Doc. 24 at 13–15) confuses "actual notice" with "inquiry notice." Because the ViX Terms of Use is clear and conspicuous, Plaintiff was on "inquiry notice" of, and thus is bound by, the provisions within. *Adams*, 2023 WL 5573822, at *4; *Derriman*, 2023 WL 9022723, at *6.

Respectfully submitted,

*<u>/s/ Jason H. Baruch</u>*
Jason H. Baruch (lead counsel)
jason.baruch@hklaw.com
Mark S. Melodia (pro hac vice)
mark.melodia@hklaw.com
Daniel A. Silver
daniel.silver@hklaw.com
**HOLLAND & KNIGHT LLP**
100 N. Tampa St., Ste. 4100
(813) 227-8500
*Attorneys for Defendant*

[4] Also, Plaintiff cites a second webpage from *Campos* (the first webpage, displayed on page two above, was rejected because the hyperlink was buried at the bottom of the webpage). But *Campos* declined to enforce the hyperlink on the *second* webpage because it was not coupled with a statement "that her registration would constitute assent"—not because the statement of assent was in a gray font. *Campos*, 2024 WL 496234, at *6. Further, the hyperlink on the second webpage of *Campos* appeared *below* the action button and thus—unlike the ViX hyperlink—was not necessarily within the user's "line of vision." *See Temple*, 360 F. Supp. 3d at 1304–05.